(Nos. 6980-6981. November 6, 1942.)

INDEPENDENT SCHOOL DISTRICT No. 6 IN TWIN FALLS COUNTY, IDAHO, Respondent, v. COMMON SCHOOL DISTRICT No. 38 IN TWIN FALLS COUNTY, IDAHO, Appellant.

INDEPENDENT SCHOOL DISTRICT No. 6 IN TWIN FALLS COUNTY, IDAHO, Respondent, v. COMMON SCHOOL DISTRICT No. 41 IN TWIN FALLS COUNTY, IDAHO, Appellant.

[131 Pac. (2d) 786.]

Rehearing denied December 21, 1942.

Rayborn & Rayborn for appellants.

Chapman & Chapman and James T. Murphy for respondent.

AILSHIE, J.—Independent School District No. 6 of Twin Falls County filed two actions, one against Common School District No. 41 of Twin Falls County and the other against Common School District No. 38 of Twin Falls County, seeking to recover from each of the districts sums claimed as balances due for attendance of pupils from these two districts at the school maintained by the plaintiff for the period of three school years. Both cases involve the same legal question and have been consolidated on this appeal. We shall hereinafter refer to respondent as *plaintiff* and to appellants as *defendants*.

September 7, 1936, plaintiff entered into a contract with the trustees of Common School District No. 38, as follows:

"BE IT AGREED: That the Board of Trustees of Independent School District No. 6 will accept and cause to be instructed with pupils of their own district, the elementary school pupils residing in Common School District No. 38.

"In consideration of the above arrangements, the Board of Trustees of Common School District No. 38 agrees to pay to the Treasurer of Independent School District No. 6, the sum of twenty-five dollars ($25.00) per pupil per year for each child attending Independent School District No. 6 from Common School District No. 38."

This contract was complied with in all respects and was renewed for the school years of 1937-38 and 1938-39. The

same form of contract was entered into between the plaintiff and the trustees of Common School District No. 41 and was likewise complied with. For the years mentioned, School District Nos. 38 and 41 did not maintain any school but sent their pupils to Independent School District No. 6, under the terms of the foregoing agreement.

Independent School District No. 6 instituted these actions to recover the "difference between the per capita cost of education in the plaintiff school district for the three academic years commencing in September, 1936, and concluding in May, 1939, and the amounts previously paid to the plaintiff school district by the defendant districts", under the agreements above mentioned. The actions are based upon the theory, that the statute under which these contracts were made (sec. 2, chap. 184, 1933 Sess. Laws, p. 340) did not authorize, and was not intended to authorize, the making of such contracts for a lesser consideration than "the actual average cost per capita for education . . . . based upon the total average daily attendance" in the district receiving the pupils.

There is no dispute or controversy over the facts of the case; and our decision must necessarily turn upon the conclusions of law reached by the trial court. They are as follows:

"I.

"That insofar as Sec. 2, Chapt. 184, Session Laws of 1933 provides for the prorating of the costs of the school wherein one district sends the children residing therein to the school of another district by agreement of the boards of trustees of the districts concerned that such language means such a pro-rating as will give to the district where the outside pupils attend at least an amount equal to the per capita cost of education in such district, and that a contract providing for the payment of an amount less than the per capita cost of education in such district is ultra vires and void, and that any other or different construction of said statutory provision would cause the said statutory provisions to be unconstitutional and void.

"II.

"That the written agreements entered into between the plaintiff school district and the defendant school district prior to the commencement of the school terms beginning

the 7th day of September, 1936, and terminating the 21st day of May, 1937, and beginning the 13th day of September, 1937, and terminating the 27th day of May, 1938, providing for the payment of a tuition less than the per capita cost of education, and the oral agreement entered into between said school districts prior to the commencement of the school term beginning the 5th day of September, 1938, and terminating the 19th day of May, 1939, providing for the payment of tuition in an amount less than the per capita cost of education in such plaintiff school district, are ultra vires and void from their inception and beginning."

The reasoning of counsel for plaintiff, and likewise of the trial court, seems to be that, if sec. 2 of chap. 184, 1933 Sess. Laws, was intended to authorize a district to contract for the reception of students from another district, at a lesser rate of compensation than "the actual average cost per capita for education", in the receiving district, then it would be unconstitutional as violative of art. 1, sec. 13, art. 7, secs. 5 and 6, art. 8, secs. 3, 4, state constitution; and art. 14, sec. 1 of United States constitution.

▇▇▇ We must approach the consideration of the statute, under which plaintiff and defendants contracted, with certain well settled rules of constitutional and statutory construction in mind: First, that every presumption must be indulged and every doubt resolved in favor of the validity of a legislative act; (*Ada County v. Wright,* 60 Ida. 394, 411, 92 P. (2d) 134, and cases cited; *Robinson v. Enking,* 58 Ida. 24, 27, 69 P. (2d) 603) ; second, that, where a statute is susceptible of two constructions, one of which would render the statute valid and the other would invalidate it, the court must give to the act a construction that will permit the statute to have force and effect. (*Grice v. Clearwater Timber Co.,* 20 Ida. 70, 77, 117 P. 112; *Johnson v. Diefendorf,* 56 Ida. 620, 637, 57 P. (2d) 1068; *Robinson v. Enking,* supra; *State ex rel Graham v. Enking,* 59 Ida. 321, 345, 82 P. (2d) 649; *Scandrett v. Shoshone County et al.,* 63 Ida. 46, 116 P. (2d) 225, 227, and cases cited therein.) Furthermore, the constitution commands the legislature to "establish and maintain a general, uniform and thorough system of public, free common schools." (Sec. 1, Art. 9, Const.)

Sec. 2 of Chap. 184, 1933 Sess. Laws, provided:

"In any year two or more districts may combine for educational purposes upon the initiative and agreement of

the school trustees of such districts. The place of holding the school, the number of months of school, the pro-rating of the costs of such school shall be arranged by agreement of the boards of trustees of the districts concerned. In case of such combination each district will continue its organization and shall receive its legal state and county apportionment and shall not be lapsed under the provisions of 32-327, Idaho Code Annotated, so long as the combination agreement is effective."

It will be observed that the plain and unambiguous language of the statute says that "The place of holding the school, the number of months of school, the pro-rating of the costs of such school shall be *arranged by agreement of the Boards of Trustees of the districts concerned.*" (Italics supplied.) If we accept this statute as meaning what its language clearly imparts, does it violate or contravene any one of the above enumerated provisions of the constitution, state or federal?

Briefly analyzed: It does not take any property from plaintiff "without due process of law." Plaintiff parts voluntarily with nothing except a slight portion of time of its teachers, who are already provided for instruction to its pupils; so we are quite clear that there is no denial of "due process" or "equal protection of the laws."

It neither imposes nor entails, either upon plaintiff district or its taxpayers, any ununiform tax. The uniformity provision of sec. 5, art. 7 of the constitution, is not violated by reason of the fact that another taxing unit within the state has a heavier or lighter tax rate than plaintiff. (*Idaho County v. Fenn Highway Dist.*, 43 Ida. 233, 253 P. 377, 106 A. L. R., p. 920n; *Scandrett v. Shoshone County et al.*, supra.) All that the uniformity clause requires is, that the rate "shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax." (*Scandrett v. Shoshone County, supra.*) There is no contention that the contract here involved resulted, or can result, in any lack of uniformity of taxation within plaintiff district.

The legislative act here involved did not impose or result in imposing any tax for "any county, city, town or other municipal corporation" upon plaintiff; nor did the statute or the contract "impose" any tax of any kind on any municipal corporation. The statute simply conferred upon the school trustees the authority and power to enter

into a contract to "combine for educational purposes" with another (including plaintiff) school district.

■ There is no showing here that the compensation, provided for by the contracts and paid by defendants, did not in fact remunerate plaintiff for any and all additional costs and expenses entailed upon plaintiff district by reason of the reception of the pupils from defendant districts. So long as plaintiff was not out anything by the arrangement, it certainly imposed no extra or additional burden on the taxpayers of plaintiff district, therefore no additional tax, imposition or burden. (See *Love v. City of Dallas*, 120 (Tex.) 351, 40 S. W. (2d) 20, 30.) There has been no attempt to impose upon plaintiff the burden or necessity of instructing defendants' children without compensation. It may be assumed, in the absence of contrary proofs, that the trustees of plaintiff district acted in the interest of their district.

■ For reasons heretofore stated, we are unable to discover, in the statute under consideration, any violation of sec. 3, art. 8 of the constitution. It does not authorize the incurring of any indebtedness exceeding "the income and revenue provided for it [the district] for such year." Indeed, so far as the record shows, plaintiff profits by the transaction.

■ Just how this act or the contract made thereunder violates sec. 4, art. 8, is not perceived. There is no *lending* or *pledging* of the credit or faith of any district or taxing unit "in aid of any individual, association or corporation" whatsoever; nor does it "become responsible for any debt, contract or liability of any individual, association or corporation in or out of this state."

■ This case does not fall within, and is not governed by, the rule announced in *Atkinson v. Board of County Commrs.*, 18 Ida. 282, 108 P. 1046, 20 L. R. A., N. S., 412; *School District No. 8 v. Twin Falls County Mut. Fire Ins. Co.*, 30 Ida. 400, 164 P. 1174; *Petrie v. Com. School Dist. No. 5*, 38 Ida. 583, 589, 223 P. 535, and other cases to same effect.

Now, as to whether defendant districts made a profit by entering into these contracts and thus sending their children to plaintiff district, is beside the question. If the defendant districts received more school funds from the state and county apportionment than they were obliged, under these contracts, to pay to plaintiff district, that is a purely

business matter that can not concern the plaintiff under the statute here involved. Moreover, even though they sent their children to plaintiff's schools, they still have to maintain their own property and meet the necessary expenses of upkeep, maintenance and all the incidentals involved in the ownership and maintenance of school buildings, grounds and property.

The amendment by the legislature, under act of March 11, 1939 (1939 Sess. Laws, chap. 243, sec. 2, p. 589), changing the entire basis on which compensation in such cases shall hereafter be fixed, for receiving pupils by one district from another, in itself evidences the fact, that the legislature there understood that a different basis had previously been in force under the statute (sec. 2, chap. 184, 1933 Sess. Laws) prior to its amendment. By the 1939 amendment, it is provided:

"Any agreement entered into under the provisions of this section must provide that the district where it is agreed the pupils of the other district or districts shall attend school must receive an amount which shall *not be less in any event than the actual average cost per capita of education in said district,* based upon the total average daily attendance, nor the per capita legal state and county apportionment received by the district or districts in which said pupils reside." (Italics supplied.)

The amended statute now provides the method of compensation for which defendants here contend, so that this decision can only affect contracts previously executed.

It is clear to us that the contract here involved was entered into in good faith; each party fully understood its terms and effect; and it was thereafter fully and satisfactorily performed and discharged. No constitutional impediment appears to prevent or invalidate the contract thus made and fully executed.

An analysis of the many cases cited by respective counsel would be of no benefit here. We find no fault with the authorities cited but do not consider any of them adverse to the conclusion we have reached upon the facts of the case in hand.

The judgments are reversed and the cases are remanded for further action, in accordance with the views herein expressed. Costs awarded to appellants.

Budge and Holden, JJ., concur.

Givens, C.J., dissents.